382 So.2d 450 (1980)
Michael J. BOVE, Jr., Appellant,
v.
PBW STOCK EXCHANGE, INC., Appellee.
No. 79-563.
District Court of Appeal of Florida, Second District.
April 18, 1980.
*451 John R. Patterson of Livingston, Patterson & Strickland, P.A., Sarasota, for appellant.
Robert C. Widman of Nelson, Hesse, Cyril, Weber, Smith & Widman, Sarasota, for appellee.
OTT, Judge.
Appellant sued appellee for damages, alleging in one count a wrongful conversion of appellant's property, a seat on appellee's stock exchange. A second count alleged a tortious interference with appellant's endeavors to sell that seat to a third party. After extensive pretrial proceedings and discovery, appellee's motion for summary judgment was granted as to both counts, without specification of grounds.
We are satisfied that the present record reveals issues of fact which will have to be resolved by trial. There are conflicts in the evidence thus far presented which preclude summary judgment on the count for conversion. In its present (admittedly incomplete) state, the evidence (although in substantial conflict) could support a judgment for appellant on that count. The facts favorable to appellant are as follows.
In 1969 appellant paid appellee $16,500 for a seat on appellee's stock exchange, and put up a $5,000 trading account deposit. Since he personally was not a licensed trader, he formed an association with a licensed broker named Byrne. Pursuant to appellee's rules, the seat was formally taken in Byrne's name. Their firm, Byer, Inc., was actually listed as the member of the exchange. Everyone, including appellee's officers and directors, knew that appellant was the "de facto" owner of the seat.
Within six months controversy between appellant and Byrne led to a material reduction in Byer, Inc.'s ratio of assets to liabilities, whereupon appellee suspended the corporation from membership in the exchange. Byrne then wrote to appellee, resigning from membership in the exchange (on behalf of both himself and Byer, Inc.), reminding appellee that appellant was the equitable owner of the seat, disclaiming all further involvement or responsibility in the matter, and directing all further inquiries *452 to appellant or his attorney. Thereafter, appellee refunded the $5,000 trading account deposit to appellant's attorney.
In 1971 appellant had an offer from one White to purchase the seat for the sum of $16,500. Appellee refused to process the application for transfer unless Byrne, as legal owner of the seat, signed the request and authorized payment of the consideration to appellant. Byrne refused to do so and White thereupon purchased a membership elsewhere.
In 1972 appellant and his attorney corresponded with appellee for a time regarding transfer of the seat into the name of either appellant or his nephew, a registered stock representative, but nothing concrete was ever accomplished.
In 1974 appellee notified Byrne that its bylaws provided for the continuation of annual dues of $600 even after the expulsion or death of a member, and that as a consequence he owed $2,400 in back dues. Byrne did not respond, so a few months later appellee notified him that if the delinquent membership dues were not paid his seat on the exchange would be sold to the highest bidder or purchased by appellee as a "treasury seat". Byrne replied to that notice, again advising appellee that he had been merely the nominal owner of the seat and that the matter of the back dues should be taken up with the equitable owner, appellant.
At no time did appellee contact or advise appellant or his attorney of the dues delinquency or its "purchase" of the seat. Instead, in 1975 appellee notified Byrne that the seat had been purchased by the exchange for $1,000 and it enclosed with that notice a demand for some $2,500 allegedly owing for six years' dues, less credit for $1,000.
Not long thereafter appellant's attorney wrote to appellee inquiring whether any progress had been made toward transferring the seat to appellant. He requested that appellee at least send some written confirmation of appellant's interest in the seat. Getting no response, the attorney wrote again a couple of months later, this time promising legal proceedings if no answer were forthcoming. Two weeks later appellee wrote to the attorney advising him that the seat had been sold for nonpayment of dues and that Byrne, as the legal owner, had been given all the notice required by the bylaws. The letter further stated that there was still a balance owing of $2,535.75 for back dues and, consequently, there were "no funds due Byrne or any other person claiming through him."
Appellant filed this action in 1976, alleging an unlawful conversion of the exchange seat and an unlawful interference in his plan to sell that seat to White. He claimed both compensatory and exemplary damages. Appellee moved for summary judgment on the grounds that (1) the statute of limitations barred recovery and (2) in any event, as a matter of law the facts would not support judgment for appellant. The trial court agreed and entered judgment in favor of appellee on both causes of action.
We find no error in the judgment on the cause of action for interference with business opportunity, which accrued (if at all)[1] in 1971 and thus was barred by 1976. Therefore, we affirm the judgment as to that count.
The wrongful sale of another's property is a conversion. Klein v. Newburger, Loeb & Co., 151 So.2d 879 (Fla. 3d DCA 1963). An equitable owner can maintain the action. Commercial Credit Co. v. Willis, 126 Fla. 444, 171 So. 304 (1936). The statute of limitations is four years (§ 95.11(3), Fla. Stat.) and it begins to run at the time of the conversion, except where the latter is *453 fraudulently concealed. Neff v. General Development Corp., 354 So.2d 1275 (Fla. 2d DCA 1978).
Appellee purportedly "bought" the exchange seat in 1975. This suit, filed in 1976, was well within the statute of limitations.[2] Apart from the procedural point, it would appear from the record before us that the trial court's appraisal of the merits of the case was simply that appellee's bylaws gave its officers authority to sell a membership upon continued default in dues, that a default in fact occurred, and that appellee then proceeded in strict compliance with the bylaws in liquidating the seat.
It may well be that appellee's bylaws expressly permit what amounts to a confiscation of an exchange seat in satisfaction of dues assessed after a member (through no apparent fault of his own) has been declared ineligible for continued membership. If so, we doubt that courts would or should intervene to correct conditions which were freely self-imposed, even though they prove harsh and inequitable in practice. Harper v. Hoecherl, 153 Fla. 29, 14 So.2d 179 (1943).[3] We are, however, impelled to observe that the dues allegedly justifying the confiscation of the seat here were assessed for the years after not only the suspension of membership, but after Byrne resigned. The record before us does not reveal whether the bylaws also sanction this oddity.
To come to the nub of the main error made by the trial court, we believe that irrespective of any proof and finding that appellee had a right to sell the seat, it had no right to do so without letting appellant know what was happening. Appellee admits that it knew at all times that appellant was vitally concerned and affected in all matters pertaining to the membership, that Byrne was completely disinterested and that there was controversy, friction and ill will between appellant and Byrne. Yet, knowing all this, appellee deliberately liquidated the membership after notifying only Byrne.
Appellee's officers and directors stand in a fiduciary relationship to the shareholders (members) and are bound to exercise the highest degree of fidelity and fairness in all their dealings with them. They may not take the slightest advantage of those they represent, and when their dealings with those who repose trust and confidence in them come under judicial scrutiny they bear the burden of demonstrating that they acted fairly and in good faith. See, generally, 8 Fla.Jur.2d Business Relationships § 295 et seq.; 19 C.J.S. Corporations § 761 et seq.[4]
We are not to be understood as prejudging this case, or anticipating what the evidence will reveal when it finally comes to trial, but the record reveals what may be a breach of faith by appellee, without excuse or explanation.
At this point the record suggests that, separate and apart from the question of fiduciary duty, appellee's course of dealing with appellant, Byrne, and Byer, Inc. was such as to lead appellant to reasonably and justifiably believe that appellee recognized him as the true owner of the exchange seat and that he would be notified of any proceedings *454 or occurrences affecting it. Such conduct estops appellee from now claiming that it was not required to give such notice. Southeastern Sales & Service Co. V.T.T. Watson, Inc., 172 So.2d 239 (Fla. 2d DCA 1965).
The summary judgment on appellant's cause of action for conversion is reversed and the case is remanded for trial. The summary judgment on the cause of action for interference with a business opportunity is affirmed.
HOBSON, Acting C.J., and SCHEB, J., concur.
NOTES
[1] The gravamen of this count is that appellee refused to transfer the seat to White when appellant requested it. But Byrne was the legal owner of the seat and his authority to transfer it may very well have been required. Appellee's refusal to proceed solely on appellant's directive was more prudent than wrongful. Byrne may have arbitrarily abused his power, but appellant (not appellee) was the one who put him in position to do so.
[2] Whether appellee deliberately tried to conceal the sale from appellant, whom it knew to be the person directly (and most) concerned, is therefore irrelevant to this aspect of the case. Of course, such conduct could have a bearing upon the question of appellee's good faith in the matter, and may properly be considered at the trial in connection with the questions of fiduciary duty and estoppel, hereinafter discussed, and also in connection with appellant's claim to punitive damages.
[3] We are aware of the exceptions to that general rule, but our decision here obviates the need for lengthy discourse on the possibility that the exchange is so "tinged with public interest" as to render it amenable to judicial supervision. McCune v. Wilson, 237 So.2d 169 (Fla. 1970); State v. Florida Yacht Club, 106 So.2d 207 (Fla. 1st DCA 1958).
[4] We note that the officers of all voluntary associations are similarly bound. 7 C.J.S. Associations § 18.