INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS DISTRICT 11, Eugene McCarty, Individually and as President; Monte Strickland, Individually and As Secretary-Treasurer; Palmer Penny, Individually and As Business Agent, and George Wolfe, Tom Cutone, Ken Clawsen and Jerome Kohm, Individually and As Trustees of District 11, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS; Harold J. Buoy, President; Executive Council of the International Brotherhood of Boilermakers, to-wit: Harold J. Buoy, John Swanson, Frank Lombardi, Thomas E. Cooper, B. F. Falls, Henry McCey, Charles W. Jones, John D. Carroll, and Donald G. Warren and Jack Griffith, Trustee, Defendants.

No. CV–80–146–H.

United States District Court,
D. Montana,
Helena Division.

Jan. 22, 1981.

David L. Holland, David L. Holland, P. C. and R. Lewis Brown, Jr., P. C., Butte, Mont., for plaintiffs.

Benjamin W. Hilley, Hilley & Loring, Great Falls, Mont., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECREE

BATTIN, Chief Judge.

This case came on regularly to be heard before the Court, sitting without a jury, on September 23 and 24, 1980. From the oral and documentary evidence introduced by both parties, and the matter having been submitted for decision, the Court now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, District 11 (hereinafter referred to as District 11), is a labor organization as defined in 29 U.S.C. § 402(i) (1976) and is engaged in an industry affecting commerce pursuant to 29 U.S.C. § 402(j) and (5) (1976). The Defendant-Counterclaimant, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (hereinafter referred to as International Boilermakers), is a labor organization within the meaning of 29 U.S.C. § 402(j)(2). Individually named plaintiffs and defendants are officers of the respective organizations.

2. District 11 is a subordinate labor organization of the International within the

meaning of 29 U.S.C. § 402(j)(3) and (5). District 11 is governed by the Constitution of the International, revised and adopted in August of 1977.

3. On or about September 15, 1977, the General President of the International Boilermakers and other international unions entered into an agreement permitting Combustion Engineering, Inc., a maintenance contractor (hereinafter referred to as Combustion) to implement and become bound by the General President's Project Maintenance Agreement regarding the Montana Power, Corette Station and Colstrip projects. The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (hereinafter referred to as the Pipefitters) was a signatory to the Combustion Engineers agreement. District 11 supplied boilermakers to perform maintenance at the projects.

4. On or about September 16, 1977, District 11 became bound by contract to the terms and conditions of the General Presidents' Project Maintenance Agreement (hereinafter referred to as the President's Agreement).

5. The above-mentioned Presidents' Agreement incorporates the Missouri River Basin Articles of Agreement within its provisions. The Missouri Agreement is also an International Agreement relating to wages, welfare funds, pension, and other monetary funds.

6. In March of 1980, representatives of Combustion, the Pipefitters, and District 11 met to discuss work assignment disputes pursuant to Article VIII, Section 2 of the Presidents' Agreement. Article VII, Section 2, provides in pertinent part as follows:

... The International Unions involved agree that upon request, International Representatives shall be assigned without delay and attempt a project settlement in the event of question on assignments.

The Contractor agrees that he shall abide by such agreements reached by and with International Union Representatives.

Both Pipefitter and District 11 representatives contended that work on equipment known as "burner nozzles"[1] belonged exclusively to their respective jurisdictions. Pursuant to Article VIII, Section 2, Combustion subsequently appealed to the respective International Unions for resolution of the dispute.

7. The Pipefitters and International Boilermakers have maintained a written agreement for approximately 40 years regarding jurisdiction over burner nozzles. Evidence presented at the hearing on the preliminary injunction suggested that District 11 (the local Boilermakers) has exercised jurisdiction over burner nozzles in the past within the state of Montana. However, evidence was also presented that appeals by the Pipefitters to the Joint Committee authorized by the Presidents' Agreement, Article VIII, Section 2, have systematically resulted in Pipefitter jurisdiction over burner nozzles in other areas of the country.

8. In an attempt to resolve the jurisdictional dispute, the Pipefitters and International Boilermakers agreed to a combined or composite crew regarding burner nozzle maintenance or construction. In the past, the exercise of jurisdiction over burner nozzles had not precipitated problems with the Pipefitters nor with the Presidents' Agreement. This "composite crew" agreement was binding on the International unions and on Combustion under Article VIII, Section 2 of the Presidents' Agreement.

9. On or about May 16, 1980, employees of Combustion refused to man the job site and work as a composite crew in violation of Article XXVI, Section 1 of the Presidents' Agreement. Article XXVI, Section 1, provides in pertinent part as follows:

THERE SHALL BE NO STRIKES, WORK STOPPAGES, PICKETING OR SLOWDOWNS BY THE UNIONS OR EMPLOYEES AGAINST THE CON-

1. Testimony at the September 23, 1980, hearing revealed that these devices are also known as "coal buckets".

TRACTOR OR ANY OTHER CONTRACTOR PERFORMING WORK ON THE PROJECT SITE THAT WOULD AFFECT THE TERMS OF THIS AGREEMENT. THERE SHALL BE NO LOCKOUTS BY THE CONTRACTOR.

10. On or about May 16, 1980, through May 28, 1980, the International Boilermakers sent several telecopy communications to District 11 (its subordinate local) through its Business Agent, Palmer Penny, concerning the work status of District 11 with Combustion. The International Boilermakers directed District 11 members (employees of Combustion) to return to the job site pursuant to the Pipefitter-International-Boilermaker "composite crew" agreement. The President of the International received no reply from District 11 during the work stoppage.

11. On or about May 23, 1980, Combustion secured a temporary restraining order from this Court prohibiting the employees of District 11 from engaging in further work stoppages. The members of District 11 refused to obey this Court's order and civil contempt proceedings are pending.

12. On or about May 28, 1980, subsequent to District 11's noncompliance with this Court's order of May 23, 1980, the General President of the International Boilermakers imposed an emergency trusteeship upon District 11 pursuant to Article XVIII, Section 3 of the International Boilermaker Constitution. Article XVIII, Section 3 of the International Constitution provides in part:

In any situation where, in the judgment of the International President, grounds for the establishment of a trusteeship exist, or grounds for suspension of a subordinate body officer exist, and in addition the activities of the subordinate body or of its officers or membership are such as to create an emergency imminently threatening the welfare, funds or property of the subordinate body, then he may summarily place a subordinate body in trusteeship, subject to a subsequent hearing by the Executive Council as set forth in Section 1 of this Article.

Subsequent to the imposition of trusteeship, the International Boilermakers directed District 11 to relinquish control over all funds, property, books, assets, checkbooks and records of District 11.

13. District 11 refused to cooperate and comply with the emergency trusteeship, forcing the International Boilermakers to solicit other member districts' aid in filling vacancies occasioned by District 11's work stoppage.

14. On or about June 4, 1980, District 11 secured a temporary restraining order from the United States District Court, District of Montana, Butte Division, Cause No. CV–80–52–BU, to prevent imposition of the emergency trusteeship and to prevent a hearing on the trusteeship as required by the International Constitution, Article XXVIII, Section 3, cited above, and by 29 U.S.C. § 464(c) (1976). 29 U.S.C. § 464(c) (1976) provides in part as follows:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment . . .

15. The Colstrip and Corette Projects were completed with International Boilermaker members of other districts.

16. The temporary restraining order issued in Cause No. CV–80–52–BU was subsequently dismissed and the International Boilermakers held the required trusteeship hearing on July 8, 1980.

17. Evidence presented at the trusteeship hearing supported the International Boilermakers' contention that failure to impose such trusteeship would result in further work stoppages. The International Boilermakers further determined that work stoppages would jeopardize future work for all International Boilermaker members and would expose the International Boilermakers to possible legal liability under 29 U.S.C.

**1250**

§§ 185 and 187, and 29 U.S.C. § 158(b)(4)(D).

18. On or about September 4, 1980, the Executive Council of the International Boilermakers voted eight to zero in favor of placing District 11 under trusteeship. A mailgram was sent on the same date to this Court, and counsel for District 11, pursuant to this Court's 72-hour notice of trusteeship order of June 27, 1980, in Cause No. CV–80–99–H.

19. On September 8, 1980, this Court issued a temporary restraining order prohibiting the imposition of the trusteeship pending preliminary injunction hearing. Evidence was introduced at the hearing regarding Combustion's contract for the construction of Colstrip 3 and 4, a project supervised by the Montana Power Company. Combustion is a signatory to a collective bargaining agreement with the International Boilermakers. Under the International Boilermakers' constitution the International Boilermakers and its subordinate, District 11, are obligated to implement the terms of this collective bargaining agreement.

21. Article XVIII, Section 1 of the International Boilermakers' Constitution authorizes the International Boilermakers' Executive Council to impose a trusteeship where there is "violation or threatened violation of collective bargaining agreements." The Court is of the opinion that the Boilermaker-Pipefitter jurisdictional dispute has not been resolved. It is clear that supervision of District 11 by means of an International Boilermakers trusteeship is necessary to comply with all the agreements in effect.

22. The International Boilermakers has no adequate remedy at law, and will incur irreparable harm if imposition of a trusteeship on District 11 is denied. The evidence produced at hearing revealed the International Boilermakers' good faith in imposing a trusteeship for protection of itself and all other subordinate districts.

### CONCLUSIONS OF LAW

From the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

1. This Court has jurisdiction of the present dispute under 29 U.S.C. § 464(a) (1976).

2. 29 U.S.C. § 461, et seq. (1976). (Title III of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA)), regulates the imposition of trusteeships by labor unions on subordinate bodies. The purposes for which a trusteeship may be imposed are enumerated within Title III of the LMRDA, which provides as follows:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462 (1976).

3. Recognizing that trusteeships are often imposed for legitimate purposes, the LMRDA creates an 18-month presumption of validity regarding a trusteeship "established by a labor organization ... as may be provided in accordance with its constitution or bylaws ...." 29 U.S.C. § 464(c) (1976). This presumption can be overcome only by "clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under § 462 of this title." 29 U.S.C. § 464(c) (1976). Under these statutes, the trusteeship must be established in accordance with relevant provisions of the International's constitution, and such provisions must not be in conflict with these statutes.

4. Members of District 11 effected a work stoppage in violation of: (1) Article XXVI, Section 1 of the General Presidents' Agreement, (2) 29 U.S.C. § 158(b)(4)(D) (1976), and (3) "composite crew" agreement between the International Boilermakers and the Pipefitters.

5. The International Boilermakers' implementation of powers enumerated within Article XVIII, Section 3 of its Constitution was commenced in good faith and from necessity in light of District 11's violation of the collective bargaining agreement between Combustion Engineering, Inc., District 11, and the International Boilermakers. It is equally apparent that District 11's work stoppage could expose the International Boilermakers to liabilities from breach of the pertinent agreements.

6. The members of District 11 violated the relevant provisions of the International Constitution and the directives of its parent organization, the International Boilermakers.

7. The trusteeship was established by the International Boilermakers' Executive Council in conformity with the applicable federal statutes and the International Constitution for the valid purpose of assuring the performance of collective bargaining agreements.

8. Plaintiffs have failed to show by clear and convincing evidence that the trusteeship was not established for a lawful purpose.

9. The defendant International Boilermakers has satisfied the standards for seeking an injunction against the plaintiff District 11 for purposes of imposing a trusteeship. One who moves for an injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. *Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975). These criteria have been approved often by courts of this Circuit. *Motor Vessels Theresa Ann v. Kreps*, 548 F.2d 1382 (9th Cir. 1977); *Richter v. Dept. of Alcoholic Beverage Control*, 559 F.2d 1168, 1173 (9th Cir. 1977). In imposing a trusteeship, "[t]he critical element in determining the test to be applied is the relative hardship to the parties." *Benda v. Grand Lodge of Internat'l Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). When a balancing of the harm tips decidedly toward the defendant, he need not show as substantial a likelihood of success on the merits. Similarly, where the probability of success on the merits is high, defendant need only show a possibility of irreparable harm. *Benda v. Grand Lodge, supra,* 584 F.2d at 315; *Hawaii Psychiatric Society, District Branch of the American Psychiatric Ass'n v. Ariyoshi*, 481 F.Supp. 1028 (D.Hawaii 1979).

The Court is of the opinion that the balancing of the hardships reveals that the International Boilermakers will suffer irreparable harm in the absence of a permanent injunction.

IT IS THEREFORE ORDERED that plaintiff District 11's request for an injunction *pendente lite* be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the trusteeship by the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers be, and the same hereby is, imposed upon Local District 11 Boilermakers.

IT IS FURTHER ORDERED that the International Boilermakers be, and the same hereby is, allowed to take possession and control of District 11's property, books, assets, bank accounts, membership lists, hiring eligibility lists and all other records in accordance with the imposition of this trusteeship.

IT IS FURTHER ORDERED that District 11, its officers, agents, or members, be, and the same hereby are, enjoined from interfering with the imposition of the trusteeship, including but not limited to engaging in work stoppages, slowdowns or any other concerted activities.

IT IS FURTHER ORDERED that District 11, its officers, agents and members be, and the same hereby are, enjoined from dissipating Union funds or any other assets of District 11.

IT IS FURTHER ORDERED that International Boilermakers be, and the same hereby is, awarded costs, disbursements and attorneys' fees incurred in this litigation.