444 So.2d 54 (1984)
Ernest REWOLINSKI, the American Federation of State, County, and Municipal Employees, AFL-CIO, and AFSCME Council 79, Appellants,
v.
Bert FISHER, John Withers, Guillermo Almedia, Elliott Flanders, Edward Mitchell, Elinor Hobbs, George F. Montano, James Stephens, Jimmy Duncan, Lonzell Bell, Myrtle Robinson, Norman Polycarpo, Willie Singletary, Andy Anderson, Clyde Witherspoon, and Maggie Seymour, Appellees.
No. 83-1836.
District Court of Appeal of Florida, Third District.
January 3, 1984.
Rehearing Denied February 13, 1984.
*56 Steel, Hector & Davis and Talbot D'Alemberte and Judith M. Korchin and Denise R. Brody, Miami, Kirschner, Weinberg, Dempsey, Walter & Willig, Washington, D.C., for appellants.
Cristol, Mishan & Sloto and Steven Mishan and Julie Feigeles, Miami, for appellees.
Before HENDRY, HUBBART and JORGENSON, JJ.
HENDRY, Judge.
Appellant American Federation of State, County and Municipal Employees, AFLCIO (hereinafter "AFSCME") appeals from an interlocutory order denying its request for an injunction and for immediate possession of property which it sought against the president of AFSCME and the local union itself, Local Union 1363 ("Local 1363," or "the local"), appellees herein. AFSCME also appeals from the trial court's order insofar as it grants judgment in favor of the counterclaimant for damages. We have jurisdiction pursuant to Rule 9.130(a)(3)(B) and (C)(ii), Florida Rules of Appellate Procedure. Because we find that the trial court was clearly in error both in its refusal to grant the injunction to enforce the administratorship imposed on Local 1363, and in its decision to recognize Local 1363's counterclaim, we reverse the decision of the trial court and direct it to enter the injunction and to order the local to comply forthwith in all respects with the administratorship.

FACTS
A brief recitation of the course of events is necessary to explain how an international union and one of its locals reached such a bitter point in their relationship. Local 1363 was formed in 1951 and was affiliated directly with AFSCME. In 1979, Council 79, a statewide organization of all of the *57 Florida local unions, was formed. The purpose of Council 79 was to provide such services to the locals as lobbying, representation and organization. In addition, Council 79 was to assume the financial obligation of all of the locals' operation expenses and salaries. Funding for Council 79 came from the payment of per capita taxes which was a percentage of the dues paid by each AFSCME member in Florida. Appellees assert that Council 79 stopped providing services and expenses after 60 days of operation and that it never resumed its obligations. In July, 1980, Local 1363, complaining about the lack of services, served notice to AFSCME of its intent to disaffiliate from Council 79. Though it never completed the internal union procedures necessary to disaffiliate, appellees strongly contend now that the current attempt to impose an administratorship is the culmination of years of retaliatory actions by the international stemming from the attempted disaffiliation. Appellants, however, argue that the administratorship was imposed because Local 1363 refused to cooperate with Local 1184, a new local composed of former Local 1363 School Board employees who were dissatisfied with the service they were getting from Local 1363. Local 1363 unsuccessfully fought the chartering of Local 1184 through all levels of internal union procedures, up to and including taking the issue to the floor of the full International Convention. In addition to refusing to turn over all books, records, and dues monies which would help Local 1184 to provide service to the School Board employees, Local 1363 sent a telegram to AFSCME on September 21, 1982 announcing that it would no longer pay per capita taxes to Council 79. On September 25, 1982, the president of AFSCME, finding that an emergency situation existed, imposed an administratorship on Local 1363 pursuant to Article IX, § 30 of the International Constitution.[1] Pursuant to Art. IX, § 33 of the Constitution, a hearing was held before a member of the Judicial Panel on the issue of the administratorship. The hearing officer affirmed the decision of the International President to impose the administratorship. Local 1363 then took an appeal to the International Executive Board, pursuant to Art. IX, § 35. The Board also ratified the actions of the International President. When Local 1363 continued *58 to refuse to comply with the administratorship, AFSCME brought this action for enforcement. After trial, the lower court denied appellants' motion for an injunction and ruled for appellees on their counterclaim of bad faith on the part of the International. This appeal ensued.

LEGAL DISCUSSION

I.
Local 1363 argued, and the trial court apparently found,[2] that in imposing the trusteeship the International proceeded in violation of its own constitution, denied the local a fair hearing, and acted maliciously or in bad faith. As we will see, however, Local 1363's arguments all reduce to a single proposition. In order to impose this trusteeship, the International exercised powers granted it under its constitution (in effect a contract between the International and the local) in various ways evidencing bad faith. The initial question we face, therefore, concerns the general standards a court is to apply in a setting like this, in assessing charges of bad faith.
It is a well established proposition in Florida law that ordinarily courts will not intervene in the internal affairs of labor unions or other voluntary associations, Harper v. Hoecherl, 153 Fla. 29, 14 So.2d 179, 180 (1943) ("The great weight, if not the universal rule, of the authorities is to the effect that ordinarily courts will not interfere to settle differences between a labor union, or other voluntary association, and its members."); Stanton v. Harris, 152 Fla. 736, 13 So.2d 17, 18 (1943) ("It appears to us that this is nothing more than an internal dispute between members and officers of a trade union, concerning which a court of equity should not interfere."). See also Truck Drivers, Warehousemen and Helpers of Jacksonville, Local Union 512 v. Baker, 473 F. Supp. 1120 (M.D.Fla. 1979); McCune v. Wilson, 237 So.2d 169 (Fla. 1970); Grand Lodge, K.P. of Florida v. Taylor, 79 Fla. 441, 84 So. 609 (1920); Bove v. PBW Stock Exchange, Inc., 382 So.2d 450 (Fla. 2d DCA 1980). Judges may properly act to change the results of internal association politics only in a few circumstances.[3] The Florida supreme court, in the leading case of McCune v. Wilson, 237 So.2d 169 (Fla. 1970), summarized these circumstances: the results of internal association processes are subject to judicial reversal only if (1) the association's action adversely affects "substantial property, contract or other economic rights" and the association's own internal procedures were inadequate or unfair, or if (2) the association acted maliciously or in bad faith. Id. at 173, 171. A showing of malice or bad faith requires "a clear allegation and convincing proof." State ex rel. Barfield v. Florida Yacht Club, 106 So.2d 207, 211 (Fla. 1st DCA 1958), quoted in McCune v. Wilson, supra, 237 So.2d at 171.
In this case, because it arises out of a dispute between a union local and its governing international organization, the Florida policy of only carefully limited judicial involvement in internal association matters takes on added force. Florida courts have repeatedly stated that in cases involving union matters, analogous federal precedent is highly relevant. School Board of Polk County v. Florida Public Employees Relations Commission, 399 So.2d 520 (Fla. 2d DCA 1981); North Brevard County Hospital District v. Florida Public Employees Relations Commission, 392 So.2d 556 (Fla. 1st DCA 1980); Public Employees Relations Commission v. District School Board of DeSoto County, 374 So.2d 1005 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980). Notably, federal case law under the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401, et seq., reinforces *59 and elaborates on the traditional Florida rule of non-intervention. Moreover, it focuses more precisely on the issue posed in this case: the propriety of the imposed trusteeship.

II.
Two provisions of the LMRDA are particularly pertinent to the case sub judice. 29 U.S.C. § 462 states:
Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
29 U.S.C. § 464 states, in relevant part:
Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate ...
(c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.
The LMRDA, recognizing that many trusteeships are imposed for legitimate purposes, creates a presumption of validity which attaches to a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided. This presumption of validity can only be overcome by clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowed by § 462 of the LMRDA. International Union, Allied Industrial Workers of America v. Local 589, 693 F.2d 666 (7th Cir.1982); Cascade Local Lodge 297 v. International Ass'n of Machinists, 684 F.2d 609 (9th Cir.1982); Hotel and Restaurant Employees and Bartenders International Union v. Rollison, 615 F.2d 788 (9th Cir.1980); Benda v. Grand Lodge of International Ass'n of Machinists & Aerospace Workers, 584 F.2d 308 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979); Graphic Arts International Union v. Local 529, 529 F. Supp. 587 (W.D.Mo. 1982); District 11 v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, 506 F. Supp. 1246 (D.Mont. 1981). Thus, courts may only review three things: the relevant provisions of the constitution and bylaws detailing when the international may impose a trusteeship, the fairness of the hearing procedure provided by the international, and whether the trusteeship was imposed or maintained for an invalid reason or from bad faith. If the imposition of the trusteeship comports with the requirements of the LMRDA, courts may not intervene. See cases cited, supra. Indeed, the United States Court of Appeals for the Fifth Circuit has gone so far as to hold that when the purpose of the trusteeship is clearly proper, precise compliance with the labor organization's constitutional procedures is not necessarily required as long as there is substantial compliance consistent with the purpose of the LMRDA. Jolly v. Gorman, 428 F.2d 960 (5th Cir.1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 *60 L.Ed.2d 635 (1971). In addition, mere ritual invocation of the term "bad faith" is not sufficient to trigger judicial intervention. The standard enunciated by the LMRDA, paralleling that applied by Florida courts in similar situations, is clear and convincing evidence. Since the statute presumes the validity of the trusteeship, the burden is upon those challenging its imposition to prove otherwise. If bad faith is proven, however, the trusteeship is void. International Union, Allied Industrial Workers of America v. Local 589, supra; Higgins v. Harden, 644 F.2d 1348 (9th Cir.1981); Local Union 13410, United Mine Workers of America v. United Mine Workers of America, 475 F.2d 906 (D.C. Cir.1973).

III.
In this case, the local alleges bad faith as justification for judicial intervention. Against the backdrop of the preceding discussion, it is clear that for the local to prevail the record must reflect clear and convincing evidence of the International's bad faith. In fact, however, the record does not provide a basis for such a finding. Moreover, from the record it is evident that the trial court obviously erred in not applying a clear and convincing standard in making his finding of bad faith on the part of the International. Instead, in drawing inferences of bad faith from alleged procedural irregularities in the course of the International's efforts to regain control over its local, the trial court placed the burden on the International to prove good faith. This error was clearly material. The trial court portrayed its finding of bad faith as following from the fact of various procedural irregularities in the International's trusteeship proceedings. It will become clear, however, that these irregularities would hardly support a conclusion of clear and convincing bad faith.
Initially, it is clear from the record that the International, whatever its reasons in fact, could have plausibly defended its trusteeship decision on several grounds. When Local 1363 refused to cooperate with the new Local 1184, the conflict frustrated 2,000 School Board employees in their choice of a certified bargaining representative.[4] Moreover, the insubordination of appellee Fisher was a major issue for the International. Statements by the trial court as well as enclosures in the record reflect that appellee Fisher would not cooperate with the International's requests, nor would he cooperate with Council 79 to resolve the problems between the Council and Local 1363 unless in return he received control over the 2,000 School Board employees and members of his local, and control (or shared control) over the activities of Council 79. The International could plausibly conclude that appellee Fisher had ceased to appreciate that "[i]n return for the strength the local gets from the international, it accepts a measure of international control." Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 907 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). Finally, there were allegations of financial wrongdoing, both concerning the refusal of Local 1363 to pay the required per capita tax to Council 79 and the administration of what was once a very large local treasury.
We do not substitute our judgment for that of the trial court concerning the facts in this case. It is clear from the record, however, that reasons other than malice or bad faith might have plausibly *61 prompted the International to impose its trusteeship. These reasons are plainly proper under Article IX, § 30 of the International Constitution, and are presumed valid under § 464 of the LMRDA. The existence of these reasons, therefore, is inevitably relevant in assessing whether the facts concerning the various procedural irregularities to which the trial court referred are indeed sufficient, as a matter of law, to support a judgment of clear and convincing bad faith.
In any event, the deficiencies to which the trial court points, on their own terms, do not, individually or collectively, leave the International in any position other than that of substantial compliance with its own established procedure. These deficiencies, therefore, are not in themselves clear and convincing evidence of bad faith. The trial court referred to a possible ex parte meeting between David Trask, the hearing officer, and the appellants. As the trial court acknowledged, however, there was no evidence that an ex parte meeting actually took place and, even if it did, there was no showing of prejudice to the appellees. The trial court also noted the failure of the hearing officer to grant a continuance before the hearing was held. Granting the continuance, however, would have arguably violated Article IX, § 33 of the International Constitution which requires that a hearing be held within 21 days of the imposition of the administratorship. Appellees' hearing was held 19 days after the imposition.[5] We cannot find that a failure to grant a continuance is prima facie evidence of bad faith. And, once more, there is no showing of specific prejudice. The trial court's concern about the dual roles of Ernest Rewolinski as administrator of Council 79 and administrator, under the trusteeship, of Local 1363, is similarly misplaced. There was no evidence presented that Mr. Rewolinski's joint positions would have created an actual conflict of interest. In any event, this issue is now moot since the administratorship imposed on Council 79 has been lifted and the Council is now operating under its own duly elected officials. Finally, the administratorship and all of the subsequent proceedings were invoked under the provision of the constitution relating to emergency situations which allows for imposition of a trusteeship and subsequent hearings. However, in a deposition taken several months later, the International President stated that he didn't think that he invoked his emergency powers; that he proceeded under another provision of the Constitution which would have required a prior hearing. This discrepancy was seen by the trial court as further evidence of bad faith. It is, in fact, immaterial. In Local 37 v. Sheet Metal Workers International Ass'n, 655 F.2d 892 (8th Cir.1981), where a merger was later characterized by the International President as a revocation of the local's charter, the court stated that "the subsequent characterization as a revocation cannot be controlling or negate the earlier acts." Id. at 896. Here, the letter from the International President to appellee Fisher clearly stated that he had determined that an emergency existed, that an administrator had been appointed, and that he had notified the chairperson of the Judicial Panel of the administratorship so that a hearing could be scheduled. These actions were approved and ratified, after hearings, by both the hearing officer and the International Executive Board. We will not allow the vagaries of memory to negate the valid actions of the International, taken pursuant to its own constitution.[6]

IV.
It is important to remember that the local's rights are those provided *62 under the International's Constitution. United Ass'n of Journeymen and Apprentices, Plumbing and Pipefitting Industry v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); Local 37 v. Sheet Metal Workers International Ass'n, supra; Grand Lodge, K.P. of Florida v. Taylor, 79 Fla. 441, 84 So. 609 (1920). Under that Constitution, the International is obliged to give the local a "full and fair hearing." This duty is met when (1) written charges are given which are specific enough to inform an accused member of the offense he has allegedly committed and (2) there is some evidence to support the charges made. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971); Lewis v. American Federation of State, County and Municipal Employees, 407 F.2d 1185 (3rd Cir.), cert. denied, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969). A fair hearing implies at least the procedural requirements of notice of the charges and the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal. Jolly v. Gorman, supra; Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); Loekle v. Hansen, 551 F. Supp. 74 (S.D.N.Y. 1982). In an emergency situation, a hearing may be held subsequent to the imposition of the trusteeship. Hotel and Restaurant Employees and Bartenders International Union v. Rollison, 615 F.2d 788 (9th Cir.1980); Local Union 13410 v. United Mine Workers of America, 475 F.2d 906 (D.C. Cir.1973); see generally Higgins v. Harden, 644 F.2d 1348 (9th Cir.1981). The procedural errors (if they were indeed errors) to which the trial court pointed did not prevent the International from meeting its responsibility under its own constitution. The trial court did not, we think, find otherwise. Rather, the trial court seems to have regarded the International's proceedings as subject as well to the trial court's own standards of procedure, and when the International did not act in strict accordance with those judicial standards the trial court found that to be evidence of bad faith. However, in Parks v. International Brotherhood of Electrical Workers, supra, 314 F.2d at 913, the court stated:
"It may well be thought desirable for unions to adopt hearing procedures that keep trial functions separate, but the federal courts are not empowered so to restructure the disciplinary procedures of unions. Separation of functions is not an absolute due process prerequisite to fairness in administrative proceedings [citations omitted]; in internal union proceedings it traditionally, and under the LMRDA, has also not been deemed a requirement of fairness. Courts, federal courts especially, are justified in ruling a union tribunal biased only upon a demonstration that it has been substantially actuated by improper motives  in other words, only upon a showing of specific prejudice."
The national labor policy is a philosophy of judicial restraint in labor affairs. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
"The basic philosophy is very simple  labor matters are best left to those who understand the language and the workings of the shop, those who have a precise knowledge of what has come to be known as the `industrial common law' ... Courts must avoid overzealous intervention in the internal affairs of unions with its concommitant atrophic effect on the ability of the organization to function as a disciplined unit, being careful not to subject the union's interpretation of its own industrial jurisprudence to *63 the removed, untutored, and possibly, antipathetic judgment of a court."
Lewis v. American Federation of State, County and Municipal Employees, supra, 407 F.2d at 1191, 1192.
Reversed and remanded with directions to enter the injunction and to order Local 1363 to comply with the administratorship forthwith.
NOTES
[1] The provisions of the International Constitution relevant to our analysis are the following:

Article IX Section 30. If the International President shall find that (1) a subordinate body has seceded or purported to secede, or (2) that dissolution or secession of a subordinate body is threatened, or (3) that dissipation or loss of the funds or assets of a subordinate body is threatened, or (4) that the subordinate body has deliberately filed false per capita tax or other financial or audit reports with the International Union, or (5) that a subordinate body is acting in violation of this constitution or of any lawful order of the Convention, the International Executive Board, or the International President, so that in the opinion of the International President an emergency situation exists, the International President is empowered to place such subordinate body under administratorship pending notice and hearing. The International President shall immediately refer the matter to the Judicial Panel for hearing in the manner hereinafter provided, shall notify the subordinate body, and shall promptly submit a written report to all members of the International Executive Board notifying them of such action and the reasons therefor.
Article IX Section 33. A hearing shall be held before the Administratorship Hearing Board as soon as is consistent with due process, but with not less than seven days' notice, and not later than twenty-one days after the imposition of any administratorship pursuant to Section 30 herein. All interested parties shall be given a fair opportunity to present their views on the matter.
Article IX Section 35. Should a majority of the Administratorship Hearing Board decide that the subordinate body has not committed any of the acts enumerated in Section 30, the appointment of the Administrator shall be vacated and the International President shall not have power to appoint an administrator over the subordinate body involved or to declare the subordinate body expelled; provided, however, that the International President may appeal such action to the International Executive Board. Should a majority of the Administratorship Hearing Board decide that the subordinate body has committed any of the acts enumerated in Section 30, the International President shall take such action as the President considers appropriate; provided, however, that the subordinate body may appeal such action to the International Executive Board.
[2] Our analysis of this case has been somewhat constrained because of the lack, for whatever reasons, of detailed findings of fact and conclusions of law.
[3] See A. Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich. L.R. 819, 835-836, 846-850, for a general discussion of when state courts will intervene in internal union affairs.
[4] The process of certifying Local 1184 as the bargaining representative of the School Board employees should have been a simple task since the Public Employees Relations Commission (PERC) has a procedure for merely changing the name of the certified bargaining representative, which was all that would have been required in this case. Instead, Local 1363 filed a petition with PERC challenging the certification of Local 1184. PERC then required that a representation election be held to establish which local the affected employees wished to have represent them. At the same time, the Dade County School Board refused to recognize Local 1184 until a representation election could be held, thus leaving in doubt for a substantial period of time who was actually representing the interests of the 2,000 School Board employees. Local 1184 easily won the representation election.
[5] Cf. Jolly v. Gorman, 428 F.2d 960 (5th Cir.1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), in which the court found the trusteeship valid where there was no formal hearing for 11 months after the imposition of the trusteeship. (e.s.)
[6] What was in fact the most important consideration for the trial court, that appellees Fisher and Withers were re-elected to their offices after the trusteeship was imposed, is an absolutely irrelevant factor under both federal and state law and thus, will not be considered.