680 So.2d 1081 (1996)
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Appellant,
v.
Kevin M. BRINKWORTH, Jr., Appellee.
No. 96-2507.
District Court of Appeal of Florida, Third District.
October 9, 1996.
Richman Greer Weil Brumbaugh Mirabito & Christensen and Alan G. Greer, Miami, for appellant.
Jorden Burt Berenson & Johnson and Markham R. Leventhal, Miami; Miller, Cassidy, *1082 Larroca & Lewin and Stephen L. Braga, Washington, DC, for appellee.
Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
COPE, Judge.
The National Collegiate Athletic Association ("NCAA") appeals an order which temporarily enjoins it from taking any action to enforce its ruling that plaintiff-appellee Kevin M. Brinkworth, Jr., is ineligible to play football for the University of Miami during the 1996 season. We conclude that the temporary injunction was improvidently issued and reverse.

I.
The present litigation arises out of the NCAA's denial of a waiver to plaintiff Brinkworth which would extend his eligibility for an additional year and allow him to play football for the University of Miami during the 1996 season.
Brinkworth enrolled in the University of Miami and became a part of its football team in 1991. The University of Miami is a member of the NCAA and as such, has agreed to abide by and enforce NCAA rules. See generally National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 183, 109 S.Ct. 454, 457, 102 L.Ed.2d 469, 479 (1988). Under NCAA rules, a student-athlete is allowed to participate in four seasons of intercollegiate competition in any one sport. The four seasons of competition have to be completed within five years from the date the student began college.
Brinkworth's five year "time clock" started to run when he began his studies at the University of Miami in 1991. During the 1991 football season, Brinkworth was "redshirted," meaning that he practiced with the team but did not compete in intercollegiate competition.[1] In 1992, 1993, and 1994, Brinkworth competed as a member of the football team.
In the 1995 season Brinkworth was awarded the position of starting fullback. In the first game of the season, however, Brinkworth sustained a serious ankle injury which required a lengthy period of rehabilitation. Brinkworth was unable to compete for the remainder of the 1995 football season and on the advice of his treating physician, withdrew from the University until his rehabilitation was complete.
Under the five-year rule, 1995 was the final year of Brinkworth's eligibility. However, the NCAA rules contained a waiver procedure which allows the NCAA in some circumstances to waive the five-year limit and grant the student-athlete another season of competition. Under the NCAA rules, a waiver request is ruled on by the NCAA eligibility staff. If the staff's ruling is unfavorable, it may be appealed to the NCAA Eligibility Committee.
In early 1996 the University of Miami applied for a waiver to allow Brinkworth to play football in the 1996 season.[2] The eligibility staff rejected the waiver request. The University of Miami then appealed to the Eligibility Committee, which turned down the appeal. Both the staff and the Committee concluded that Brinkworth did not meet the waiver criteria which are spelled out in the NCAA rules.
Brinkworth then obtained legal counsel. Legal counsel requested an opportunity to prepare a submission on Brinkworth's behalf. The University of Miami cooperated in this request and asked the Eligibility Committee to reconsider. The Eligibility Committee considered the attorney's submission but again denied the waiver, issuing a statement of reasons with its denial.
*1083 The crux of the dispute was that the NCAA had amended the waiver rule in 1994 to provide detailed criteria for the grant or denial of a waiver. Brinkworth took the position that the NCAA should apply the waiver rule which was in existence in 1991, when Brinkworth began playing football at the University of Miami. Brinkworth argued that under the 1991 rule, in all likelihood he would have qualified for the waiver. He contended that it was unfair to apply the 1994 waiver rule to his case, even though the 1994 rule was the rule in effect at the time of his injury in 1995 and at the time of his waiver application in 1996.
The Eligibility Committee rejected Brinkworth's argument, stating that in its view, the NCAA had intended the new waiver rule to become effective at the time it was adopted in 1994, and pointing out that the Eligibility Committee had uniformly applied the 1994 rule to all waiver applications made after the 1994 rule became effective. Brinkworth also argued, in substance, that his 1991 "redshirt" year should not be taken into account for purposes of the waiver request; the Committee took the position that the waiver rule was clear and contrary to Brinkworth's position.[3]
Brinkworth then filed this lawsuit seeking injunctive relief against the NCAA. The complaint proceeded on the theory that there is a contractual relationship between the NCAA and its member institutions, including the University of Miami. The complaint alleged that student-athletes, including Brinkworth, are intended beneficiaries of the NCAA rules and, more particularly, the waiver rule. The complaint alleged that the NCAA had acted arbitrarily and unfairly in applying the 1994 waiver rule to Brinkworth's waiver request. Brinkworth requested judicial review of the NCAA action and an injunction prohibiting the NCAA from enforcing its determination that Brinkworth is ineligible to compete in the 1996 football season. After a hearing, the trial court entered a temporary injunction which states that the NCAA "is hereby enjoined and prohibited from directly or indirectly adhering to its present ruling that plaintiff, Kevin M. Brinkworth, is ineligible to play football this coming season [the 1996 season] for the University of Miami pending further order of this Court[.]"[4]
The NCAA has appealed the granting of the temporary injunction.

*1084 II.
The NCAA is properly viewed as a private organization, not a governmental agency. National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. at 183, 190-99, 109 S.Ct. at 457-58, 461-66.
The NCAA is an unincorporated association of approximately 960 members, including virtually all public and private universities and 4-year colleges conducting major athletic programs in the United States. Basic policies of the NCAA are determined by the members at annual conventions. Between conventions, the Association is governed by its Council, which appoints various committees to implement specific programs.
One of the NCAA's fundamental policies "is to maintain intercollegiate athletics as an integral part of the educational program and the athlete as an integral part of the student body, and by so doing, retain a clear line of demarcation between college athletics and professional sports." App. 80. It has therefore adopted rules, which it calls "legislation," ibid., governing the conduct of the intercollegiate athletic programs of its members. This NCAA legislation applies to a variety of issues, such as academic standards for eligibility, admissions, financial aid, and the recruiting of student athletes. By joining the NCAA, each member agrees to abide by and to enforce such rules.
488 U.S. at 183, 109 S.Ct. at 457-58.
Under Florida law[5] a court may intervene in the internal affairs of a private association only in exceptional circumstances. "It is a well established proposition in Florida law that ordinarily courts will not intervene in the internal affairs of labor unions or other voluntary associations[.]" Rewolinski v. Fisher, 444 So.2d 54, 58 (Fla. 3d DCA), review denied, 453 So.2d 43 (Fla.1984) (citations omitted). Thus, "the results of internal association processes are subject to judicial reversal only if (1) the association's action adversely affects `substantial property, contract or other economic rights' and the association's own internal procedures were inadequate or unfair, or if (2) the association acted maliciously or in bad faith." Id. (summarizing McCune v. Wilson, 237 So.2d 169 (Fla. 1970)); see also Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941). There is no suggestion that the NCAA acted maliciously or in bad faith in this case, and consequently the second of the Rewolinski alternatives is not involved here.
Under the first Rewolinski alternative, the plaintiff must show that the NCAA's action adversely affects substantial property, contract or other economic rights, and that the NCAA's own internal procedures were inadequate or unfair. We need not decide whether the NCAA action adversely affects Brinkworth's substantial property, contract or other economic rights, because we conclude that there is no showing that the NCAA's own internal procedures were either inadequate or unfair.
The NCAA has adopted a procedure which allows a student athlete to apply for a waiver of the five-year rule. Under the NCAA procedure, the university submits a waiver request on behalf of the student-athlete to the eligibility staff. If the staff turns the waiver request down, then the university may submit an appeal on behalf of the student-athlete to the Eligibility Committee. In this case, after a rejection by the Eligibility Committee, the Committee also entertained a request for reconsideration. As we view the matter, these procedures are both adequate and fair.
Brinkworth argues, in essence, that even though the procedures may have been fair, the ultimate ruling was not. Brinkworth takes issue with the Committee's ruling that his case is governed by the 1994 version of the waiver rule, instead of the 1991 version.
The issue Brinkworth seeks to raise is beyond our province to review. It is up to the NCAA to interpret its own rules, not the judiciary. See Rewolinski, 444 So.2d at 58; see also Regents of the University of Minnesota v. The National Collegiate Athletic Ass'n, 560 F.2d 352, 372 (8th Cir.), cert. denied, 434 U.S. 978, 98 S.Ct. 600, 54 *1085 L.Ed.2d 472 (1977). The NCAA followed fair procedures in allowing the university the opportunity to state its case on behalf of the student-athlete, including an appeal within the NCAA when dissatisfied with the initial ruling. As the procedures were adequate and fair, there was no basis on which to intervene in the internal affairs of the NCAA.
The temporary injunction is reversed and the cause remanded with directions to enter judgment for the NCAA.
Reversed and remanded.
NOTES
[1] According to the NCAA Guide to Eligibility, a "redshirt" is "A student-athlete who does not participate in intercollegiate competition ... in a given sport at your institution for an entire academic year. This enables the student-athlete to attend your institution and participate in practice without utilizing a season of competition in that sport."
[2] The University of Miami had to make the request on Brinkworth's behalf because only colleges and universities are members of the NCAA. Individual student-athletes are not members, and consequently his waiver request had to be submitted for him by the member institution, the University of Miami.
[3] The text of the denial of reconsideration is as follows:

The committee has voted to deny reconsideration of the petition for an extension of eligibility for Kevin Brinkworth for the following reasons.
1. The reconsideration request does not meet the newly discovered information criteria for reconsideration.
2. It would be inequitable to grant the petition because the committee and staff have consistently denied petitions by student-athletes who have been in similar circumstances.
3. The Committee's position on a redshirt year was established at the time the new eligibility extension waiver bylaw was adopted, and this policy for implementing the bylaw was immediately publicized to the membership in the NCAA News. The Committee has consistently followed it in numerous cases. The Committee believes a student-athlete has had an opportunity to participate in the student's sport when the student has had the opportunity to participate in practice for that sport. The Committee does not believe the association intended to regard a season where a student practiced in a sport but did not engage in competition against teams from other institutions as hardship which justifies granting a student-athlete a waiver for an additional year of competition after the 5th year.
4. The Committee believes the association intended the revised bylaw on eligibility extension waivers to become effective immediately, and the Committee has so applied it to all cases that have come before us after the bylaw was adopted. The Committee believes that if the association intended the Committee to wait until after student-athletes who were enrolled in NCAA institutions at the time the bylaw was adopted had graduated or left their institutions, a delay in some cases of five years, the association would have so provided in the bylaw.
[4] Prior to entry of the injunction, the trial court requested the views of the University of Miami, which had not been joined as a defendant in the case. The University of Miami informed the court that it did not object to the entry of the injunction, but that it would not allow Brinkworth to compete until such time as there was a final resolution of the dispute with the NCAA. The University explained that if it allowed Brinkworth to compete and the temporary injunction were later reversed, then the University of Miami could be exposed to NCAA sanctions for having used a player in competition who was later determined to be ineligible.
[5] The parties agree that Florida law applies for purposes of this proceeding.